IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    v.

MICHAEL EISENGA,                                                    Case No. 20-cr-137-wmc

    Defendant,

CITY OF COLUMBUS,

    Garnishee Defendant.

**MICHAEL EISENGA'S RESPONSE TO THE GOVERNMENT'S MOTION FOR A GARNISHMENT DISPOSITION ORDER**

## INTRODUCTION

The United States has filed a motion to garnish funds from the City of Columbus which are being held for the benefit of Columbus Commerce Center, LLC, a separate LLC which has a contract with the City of Columbus for a tax incremental financing (TIF) district that goes back to 2008. The government's motion should be denied for the following reasons.

First, the victim for whom the restitution judgment was entered, Alliant Credit Union, already filed a civil lawsuit against the City of Columbus seeking to recoup payments it made to Columbus Commerce Center under the TIF agreement. A state court dismissed the claims against the City on the grounds that it owed no duty to Alliant. Under the doctrines of claim and issue preclusion, the government is prohibited from re-litigating the same issue via its garnishment motion.

Second, Alliant has a pending civil lawsuit against Columbus Commerce Center, LLC (part of the same lawsuit mentioned above) in which it seeks reimbursement for tax payments made by the City to Columbus Commerce Center, LLC under the TIF agreement. Under the *Younger*

abstention doctrine, this Court should not interfere with a pending state civil case where the same relief is being sought and litigated.

Third, the government is asking this Court to take a restitution judgment against an individual defendant and apply it to a separate corporate entity. Because the government has not met its burden to apply an equitable remedy such as veil piercing or the alter ego doctrine, the motion should be denied.

## BACKGROUND

### I. ALLIANT INITIATES A FORECLOSURE LAWSUIT (FIRST ACTION)

On May 30, 2019, Alliant Credit Union filed a foreclosure action in Columbia County Circuit Court against Eisenga and CCC Lot 2, LLC concerning property at 150 Commerce Drive in Columbus. (Fernholz Dec., Ex. J.) On July 10, 2019, the Circuit Court appointed a receiver over the 150 Commerce Drive property. (Fernholz Dec., Ex. A.) Two days later, a default judgment of foreclosure was entered. (Fernholz Dec., Ex. B.) Following the sheriff's sale, a deficiency judgment was entered against Eisenga and CCC Lot 2, LLC for $5,019,513.57 on August 26, 2020. (Fernholz Dec., Ex. C.) The factual allegations in the first civil lawsuit served as the underlying basis for the criminal indictment on October 22, 2020. (Dkt. 2.)

### II. CRIMINAL PROCEDURAL HISTORY

On June 29, 2021, this Court sentenced Eisenga to 42 months in prison, and, as is relevant for purposes of this motion, ordered restitution of $4,027,035.51 in favor of Alliant Credit Union. (Dkt. 40.) A forfeiture order was issued in favor of the United States and against Eisenga for this amount. (Dkt. 38.) More than a year later, the United States filed an application for a writ of continuing garnishment against the City of Columbus in an effort to collect the remaining $3,859,809.48 on the garnishment. (Dkt. 60.) Eisenga was still incarcerated at the time the

government filed its motion. The Court granted the application, and the writ of garnishment was issued to the City of Columbus. (Dkt. 61 & 62.)

The City responded that it was not in custody, control, or possession of any of Eisenga's property. (Dkt. 64, Ex. A.) However, it answered that it was holding TIF financing payments owed to Columbus Commerce Center, LLC. (Id.) These TIF payments were held pursuant to a 2012 development agreement between the City of Columbus and Columbus Commerce Center, LLC, and were identified in the following amounts:

(1) $71,989.70 for tax year 2019 for parcel number 1512.02;

(2) $47,206.59 for tax year 2019 for parcel number 1512.02;

(3) $34,176.06 for tax year 2020 for parcel number 1512.19;

(4) $33,326.13 for tax year 2020 for parcel number 1512.19.

(Id.) The City is holding these funds pending further direction from this Court. (Id.)

Nearly eight months later, the United States filed a motion for garnishment of the above funds. (Dkt. 65.) The sole basis for this motion is that Eisenga "owned and operated Commerce Center, LLC during the relevant time frames in this case." (Dkt. 65:4.)

### III. COLUMBUS COMMERCE CENTER'S TAX INCREMENTAL FINANCING AGREEMENT WITH THE CITY OF COLUMBUS

Before discussing the second civil lawsuit Alliant filed against Eisenga, it will be useful to pause here and explain the TIF agreement with the City of Columbus. In 2008, the City entered into a TIF, first with First American Properties, and later with Columbus Commerce Center, LLC, both of which are entities controlled by Eisenga. (Dkt. 32-1, Ex. 1.) After multiple amendments to the development agreement that created the TIF, two separate lots were developed. (Fernholz Dec., Ex. E. at p. 4.) One of those lots was the 150 Commerce Drive property, on which a building for a grocery store was constructed. (Id.) In 2014, CCC Lot 2, LLC acquired title to the 150

3

Commerce Drive property. (Id.) Significantly, CCC Lots 2, LLC was never made a party to the TIF agreement. (Id.)

In July 2019 and February 2020, the City of Columbus received invoices from Columbus Commerce Center for requests for payment under the TIF. (Fernholz Dec., Ex. E at p. 5.) Although the City was aware that the 150 Commerce Drive property was in receivership and a foreclosure was pending, based on advice from its counsel, the City honored the terms of the TIF and issued two payments to Columbus Commerce Center, LLC for the 150 Commerce Drive property. (Id. at 5-6.) The payments comprised of $63,189.04 on August 20, 2019, and $47,781.44 on March 3, 2020, for a total of $110,970.48. (Id. at 6.)

Likewise, based on the advice of counsel, Eisenga accepted the TIF payment from the City, through Columbus Commerce Center, LLC, on the grounds that neither Alliant nor CCC Lot 2, LLC were parties to the TIF agreement. (Dkt. 32-2, Ex. 1.)

## IV.    ALLIANT FILES A LAWSUIT SEEKING TIF PAYMENTS FROM THE CITY (SECOND ACTION)

These payments caused Alliant to file a second civil lawsuit against Eisenga on April 28, 2021, while also naming Columbus Commerce Center, LLC and the City of Columbus. (Fernholz Dec., Ex. D.) Alliant alleged a negligence cause of action against the City on the grounds that the City should not have made payments to Columbus Commerce Center, LLC while the property was in receivership. (Id., ¶10.) As to Eisenga and Columbus Commerce Center, LLC, Alliant alleged causes of action for conversion, civil conspiracy, and unjust enrichment. (Id., ¶¶11-16.)[1]

---

[1] In the second Alliant lawsuit, Eisenga's attorney filed an answer on behalf of Columbus Commerce Center, LLC, and a motion to dismiss on behalf of Eisenga. *Alliant Credit Union v. City of Columbus*, No. 2022AP258, 2023 WL 2700881, ¶¶5-6, (Wis. Ct. App. Mar. 30, 2023) (per curiam). The circuit court denied the motion to dismiss. *Id.*, ¶7. Two months later, Alliant filed a motion to default judgment, as Eisenga did not file an answer after his motion to dismiss was denied. *Id.*, ¶8. The circuit court denied Eisenga's subsequent motion to enlarge time and granted a default money judgment against Eisenga for $110,870.48. *Id.*, ¶12. Eisenga appealed the default judgment, which was affirmed by the Wisconsin Court of Appeals. *Id.*, ¶32.

The City of Columbus moved for summary judgment, arguing that "The City entered into a development agreement with Columbus Commerce Center, LLC to facilitate development of certain lands and to require Columbus Commerce Center to install necessary public infrastructure. In exchange, the City agreed to provide Columbus Commerce Center with development incentives based on the assessed value of the completed development. At no point did the City have any obligations to CCC Lot 2, LLC or Alliant Credit Union." (Fernholz Dec., Ex. E at p. 1.) The motion was fully briefed, with a response from Alliant and a reply by the City. (Fernholz Dec., Ex. F & G.)

The Circuit Court for Columbia County, the Hon. Troy Cross presiding, held a hearing on the City's motion for summary judgment on December 13, 2022. At the hearing, counsel for the City reiterated:

> [T]his was property taxes that the property [at 150 Commerce Drive] was obligated to pay to the city and the city had the right to use for any purpose it wanted consistent with the tax incremental financing law. And that's exactly what the city did when it entered into a separate agreement with the developer. And that agreement was in no way implicated by the appointment of the receiver.

(Fernholz Dec. Ex. I at p. 3:15-22.) The court granted the City's motion, and dismissed the City from the lawsuit. (Fernholz Dec., Ex. H.) The deadline to appeal the dismissal of the City has passed, making the dismissal order final and binding. *See* Wis. Stat. § 808.04(1).

## ARGUMENT

I. **THE GOVERNMENT'S MOTION IS BARRED BY ISSUE AND CLAIM PRECLUSION**

The argument being raised by the United States in its motion for a garnishment disposition order is substantially similar to the failed negligence claim that Alliant asserted against the City of

---

A petition for review with the Wisconsin Supreme Court was filed on April 27, 2023. (Available [here](#)). The parties are awaiting a decision from the state supreme court.

Columbus. To wit, the government asserts in its motion that "tax increment payments due to Commerce Center LLC and being held by the City of Columbus constitute a substitute asset belonging to [Eisenga]." (Dkt. 65:4.) Similarly, Alliant argued in state court that the City was liable to Alliant for paying Columbus Commerce Center, LLC under the TIF agreement, when the City knew that Alliant was pursuing a foreclosure claim against Eisenga for loan fraud. But the Wisconsin Circuit Court rejected Alliance's argument, and held that the City had no obligation to Alliant under the TIF agreement. This decision is final and should given preclusive effect to the government's motion.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982). To decide the preclusive effect of a statute court judgment, federal courts apply the law of preclusion in the state where the judgment occurred. *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, 934 F.3d 553, 560 (7th Cir. 2019). Accordingly, we turn to Wisconsin law on issue and claim preclusion.

    **A.    Issue Preclusion Applies**

"[I]ssue preclusion, is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). "Under issue preclusion, a final judgment bars relitigation of a factual or legal issue actually litigated and decided in an earlier action." *Kruczek v. Wisconsin Dep't of Workforce Dev.*, 2005 WI App 12, ¶28, 278 Wis. 2d 563, 692 N.W.2d 286. For this doctrine to apply, two factors must be met: "(1) the issue in both actions must be the same and have been actually litigated, and (2) the party against whom preclusion is asserted must have been a party, in privity with a party, or had an identify of interest with the party to the previous

6

litigation." *Id.* Issue preclusion may be applied offensively or defensively. *In re Paternity of Amber J.F.*, 205 Wis. 2d 510, 518, 557 N.W.2d 84 (Ct. App. 1996). Whether to apply the doctrine of issue preclusion is a question of law for the court to decide. *In re Commitment of Parrish*, 2002 WI App 263, ¶14, 258 Wis. 2d 521, 654 N.W.2d 273.

On the first factor, the issues presented are the same: does Alliant (either as a judgment creditor or a restitution-seeking victim) have a right to TIF payments made from the City of Columbus to Columbus Commerce Center, LLC, by virtue of its judgment/restitution claim against Eisenga? The Columbia Circuit Court held that there was no such obligation by the City to pay over these funds. The matter was fully litigated to a summary judgment decision, and was not appealed.[2]

On the second factor, Alliant, if not in privity with the government, certainly has an identity of interests with the government. *United States v. Lee*, 659 F.3d 619, 620 (7th Cir. 2011) (Noting that the Mandatory Victims Restitution Act of 1996 "permits courts to enforce restitution orders using the same practices and procedures for the enforcement of a 'civil judgment' under federal or state law.").

Accordingly, the Court must move to the second part of the issue preclusion analysis, which is whether application of the doctrine to the case at hand comports with "fundamental fairness." *Aldrich v. Lab. & Indus. Rev. Comm'n*, 2012 WI 53, ¶98, 341 Wis. 2d 36, 814 N.W.2d 433. The Wisconsin Supreme Court has set forth five factors that a circuit court *may* consider when determining whether issue preclusion comports with fundamental fairness:

> (1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law?;

---

[2] Issue preclusion applies with equal force to cases decided by summary judgment, as a summary judgment decision results in a final and conclusive order. *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 302–03, 592 N.W.2d 5 (Ct. App. 1998).

(2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law?;

(3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue?;

(4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first matter than in the second?; and

(5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel (now issue preclusion) to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.*, ¶110. Ultimately, it is up to the court to determine how to weigh these factors to reach decision based on "justice and equity." *Id.*, ¶¶111-112. Factors 1, 2, and 4 are questions of law, while factors 3 and 5 are policy questions for the court's discretion. *Id.*, ¶112.

Applying these factors to the case at hand, because Alliant is the restitution victim for which the government brings this motion, the first factor applies. On the second factor, the ability to garnish funds from the City is a question of law such that the legal issues are the same. Next, while this case is venued in federal court and the prior judgment in state court, Alliant was ably represented in state court and the matter was fully briefed for a summary judgment hearing. Moreover, Alliant elected not to appeal the court's decision. Fourth, the burdens of persuasion are the same as these are legal questions for the Court to resolve. And finally, no issue of public policy should prevent this Court from adhering to a sound state court decision on the question of corporate form.

For these reasons, issue preclusion applies to the government's motion for garnishment of funds from the City of Columbus.

### B.     Claim Preclusion Applies

For similar reasons, the doctrine of claim preclusion applies and prevents this Court from disturbing the final decision by the Columbia County Circuit Court. For the doctrine of claim preclusion to apply the following elements must be met: "(1) an identify between the parties or their privies in the prior and present suits; (2) an identify between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). Like the doctrine of issue preclusion, whether to apply claim preclusion is a question of law. *Id.*

Turning to the three-part test, the first element is met for the reasons set forth above. For purposes of claim preclusion, "[p]rivity exists when a person is so identified in interest with a party to former litigation that he or she represents precisely the same legal right in respect to the subject matter involved." *Pasko v. City of Milwaukee*, 2002 WI 33, ¶16, 252 Wis. 2d 1, 643 N.W.2d 72. Said differently, "privity compares the interests of a party to a first action with a nonparty to determine whether the interests of the nonparty were represented in the first action." *Id.*, ¶18. Because the government is filing this motion solely to benefit Alliant, the two are privies for purposes of claim preclusion.

On the second issue, the causes of action rely on the same theory, which is that Alliant is entitled to TIF payments that the City is contractually obligated to issue to Columbus Commerce Center, LLC. And on the last factor, there is a final judgment on the merits.

Unlike the doctrine of issue preclusion, there is no "fundamental fairness" test to apply for claim preclusion. *Kruckenberg v. Harvey*, 2005 WI 43, ¶62, 279 Wis. 2d 520, 694 N.W.2d 879. In other words, if the elements of claim preclusion are met, the court *must* apply the doctrine, even if it appears that the results are unfair. *Id.*, ¶62. The Court should have no reservations about

9

holding that claim preclusion bars the government from doing an end run around the final decision in the Columbia County case.

### II. UNDER THE *YOUNGER* ABSTENTION DOCTRINE, THIS COURT SHOULD NOT INTERFERE WITH AN ONGOING STATE COURT CASE INVOLVING THE SAME ISSUES

As noted above, the second Columbia County lawsuit filed by Alliant remains open and there are pending claims asserted against Columbus Commerce Center, LLC. Under the *Younger* abstention doctrine, this Court should decline to grant the United States' motion for garnishment, as there is already a pending state court case where the same relief is sought.

Named after the Supreme Court case of *Younger v. Harris*, 401 U.S. 37 (1971), the *Younger* abstention doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *J.B. v. Woodard*, 997 F. 3d 714, 722 (7th Cir. 2021). "At bottom, *Younger* represents federal acknowledgement of the competency and coequal authority of state courts. It holds that, if federal adjudication of an issue would interfere with a state court proceeding that satisfies the *Middlesex* factors, the federal court must abstain, unless an exception applies." *Berrada Properties Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 751-52 (E.D. Wis. 2022) (citing to *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982)).

Importantly, *Younger* abstention is not subject to a proverbial "glass slipper test" such that the factors must perfectly apply to the case at hand. *Id.* at 751. "Rather, *Younger* abstention applies when federal intervention would improperly disrupt ongoing state court proceedings, accomplishing the kind of interference that *Younger* sought to prevent, even if the specifics are distinguishable." *Id.*

Here, granting the government's garnishment motion undoubtedly would interfere with the Columbia County case. Indeed, it would effectively end the case, as it would grant Alliant the

relief it is seeking. That a federal court decision would interfere with an on-going state court case is all that matters for purposes of the *Younger* abstention doctrine to apply. *Berrada*, 608 F. Supp. 3d at 752 (collecting cases).

While *Younger* initially applied only to federal cases that interfered with state criminal proceedings, the doctrine has since expanded such that it now prohibits federal courts from interfering with state court proceedings "that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims." *Berrada*, 608 F. Supp. 3d at 751 (citing to *Middlesex*, 457 U.S. at 432). On the first factor, there is no doubt a state court is "judicial in nature." On the second factor, the state court lawsuit filed by Alliant implicates important state interests, namely the ability of a judgment creditor to seek enforcement against a non-debtor defendant. And finally, although no constitutional claims have been asserted in Alliant's state court lawsuit, "a federal court should assume that state procedures will afford an adequate remedy [for those claims], in the absence of unambiguous authority to the contrary." *Berrada,* 608 F. Supp. 3d at 753 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

For these reasons, under *Younger*, this Court should deny the United States' motion.

### III. THE GOVERNMENT HAS PROVIDED NO BASIS FOR USING A RESTITUTION ORDER AGAINST EISENGA AGAINST A SEPARATE AND INDEPENDENT LLC

Finally, the government's motion should be denied on the grounds that it is seeking to collect against an entity that is not subject to a restitution order. Effectively, the United States is asking this Court to implement an equitable remedy of "veil piercing" or the "alter ego" doctrine to get at assets that belong, not to Eisenga, but to Columbus Commerce Center, LLC. But the government has not done any of the heavy lifting to justify such a remedy.

The "alter ego" or "mere instrumentality" theory allows for corporate veil piercing where the "corporate affairs are organized, controlled and conducted so that the corporation has no

separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage, or to commit an injustice." *Consumer's Co-op. of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 476, 419 N.W.2d 211 (1988) (quotation omitted). Relatedly, piercing the corporate veil is an equitable remedy that may be imposed by a court. *Id.* at 482.

Wisconsin courts will look at the following factors to determine if subsidiary corporations are the mere alter ego of their parent:

> 1) common stock ownership, 2) overlapping directors and officers, 3) combined use of corporate offices, 4) capitalization of the subsidiary by the parent, 5) financing of the subsidiary by the parent, 6) control of subsidiary's stock by parent, 7) use of subsidiary's property by parent, 8) inter-corporate loans, 9) parental incorporation of the subsidiary, 10) consolidated tax returns, 11) independent decision making by the subsidiary, 12) independent decision making by the directors of subsidiary, 13) observance of formal corporate legal requirements, 14) contracts between the subsidiary and parent, and 15) fraud or injustice to third-parties.

*Cemetery Servs., Inc. v. Wisconsin Dep't of Regul. & Licensing*, 221 Wis. 2d 817, 827, 586 N.W.2d 191 (Ct. App. 1998). Most relevant among the factors is the "amount of control that one corporation exercises or has the right to exercise over the other; whether both corporations employ independent decision-making; whether corporate formalities were observed; whether the corporations operated as one corporation; and whether observing the corporate separateness would facilitate fraud." *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶37, 335 Wis. 2d 1, 803 N.W.2d 623.

It is the government's burden to meet these requirements, and it has offered nothing in support of its motion. In fact, as shown in this response, the TIF agreement that the government seeks to garnish has been in existence since 2008, and long predates any judgment or restitution order against Eisenga. Perhaps Alliant will prevail in its claims against Columbus Commerce

12

Center, LLC, but there was certainly nothing in the United States' garnishment motion to suggest that this Court can conclude—on the scant record before it—that the restitution judgment against Eisenga should apply to a separate corporate entity that was not involved in the original Alliant lawsuit that led to the criminal charges.

## CONCLUSION

For the reasons set forth herein, this Court should deny the United States' motion for a garnishment disposition order.

Dated this 23rd day of May, 2023.

                                        **CRAMER, MULTHAUF & HAMMES, LLP**
                                        Attorneys for Defendant, Michael Eisenga

                                      BY: *Electronically signed by Matthew M. Fernholz*
                                             MATTHEW M. FERNHOLZ
                                             (State Bar No.: 1065765)

CRAMER, MULTHAUF & HAMMES, LLP
1601 East Racine Avenue, Suite 200
P.O. Box 558
Waukesha, WI 53187-0558
262-542-4278
mmf@cmhlaw.com